792 A.2d 481 (2002)
348 N.J. Super. 494
Della E. STRAUBINGER and Barbara Gregoire, Plaintiffs,
v.
Margaret Krell SCHMITT and Charles Schmitt, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 2001.
Decided March 5, 2002.
*483 Harvey Levine, East Brunswick, argued the cause for appellant/cross-respondent Levine & Wallerstein (Levine & Wallerstein, attorneys; Martin B. Wallerstein, on the brief).
Joseph P. Kelly, Kearny, argued the cause for respondent/cross-appellant Doyle & Brady (Doyle & Brady, attorneys; Nelson A. Miranda, on the brief).
Before Judges SKILLMAN, CARCHMAN and WELLS.
*482 The opinion of the court was delivered by WELLS, J.A.D.
The law firm of Levine and Wallerstein (Wallerstein), attorneys for plaintiff Della Straubinger, appeals from a judgment of the Law Division, Hudson County, which awarded it one-third of a contingent fee generated by a personal injury recovery secured by Straubinger and two-thirds to the law firm of Doyle and Brady (Brady) who formerly represented Straubinger. Brady cross appeals, asserting that the trial judge erred by failing to follow established criteria for the award to Wallerstein.
The underlying facts of the dispute are not materially contested. On March 10, 1998, plaintiffs Della Straubinger and Barbara Gregoire were injured in a two-car accident with defendant Margaret Krell Schmitt. Straubinger and Gregoire were the driver and passenger, respectively, of one car while Schmitt was the operator of the other car. Apparently, Schmitt was intoxicated and turned left in front of Straubinger causing the accident.
Straubinger and Gregoire both retained Brady to represent them in pursuing a claim against Schmitt. Straubinger retained the firm first, while Gregoire followed shortly thereafter. Straubinger signed a contingent fee agreement on March 17, 1998. In September 1998, Brady filed a complaint on behalf of both Straubinger and Gregoire in Superior Court, Hudson County, naming as defendants Margaret Krell Schmitt as driver and Charles Schmitt as owner of the car which collided with Straubinger. On July 22, 1999, the case proceeded to arbitration, resulting in awards of $175,000 for Straubinger and $125,000 for Gregoire. The arbitrator determined that Schmitt was 100 percent liable. A trial de novo notice was promptly filed by Straubinger and Gregoire.
Dissatisfied with Brady's services, on January 4, 2000, Straubinger discharged the firm and retained Wallerstein to handle her case. Straubinger certified that she felt she was not being given proper representation. More specifically, she was upset by the fact that the arbitration occurred before her August 1999 neck surgery; she felt unprepared for both the arbitration hearing and her deposition; she claimed that Brady did not keep her informed of the status of her case; and, her telephone calls were not returned.
At a settlement conference on June 13, 2000, in front of Judge Gallipoli, Straubinger, now represented by Wallerstein, settled for $196,342.15 while Gregoire, still represented by Brady, received $98,000. A fee dispute arose between the two law firms. On July 26, 2000, Judge Gallipoli entered a consent order with regard to the lien for counsel fees. He ordered that $68,225.99 of the settlement proceeds which constituted the contingent fee and litigation costs attributable to Straubinger's recovery be placed in escrow pending further order of the court. The order also set a date for a plenary hearing before another judge.
After hearing on August 28, 2000, the judge rendered his decision by letter opinion *484 on September 21, 2000. The judge awarded two-thirds of the counsel fees to Brady and one-third to Wallerstein. Wallerstein filed its Notice of Appeal of that decision on October 11, 2000. Brady timely cross-appealed.
During the course of the hearing on August 28, 2000, Brady testified that he had discussed with Gregoire a potential conflict of interest in representing both her and Straubinger, as passenger and driver of the vehicle. Gregoire told him that she did not wish to sue her friend Straubinger. The evidence showed that Schmitt was intoxicated, and the question of liability was very clear to Brady. However, Brady never discussed the issue of any conflicts with Straubinger. There was also no discussion with either client of the potential for conflict arising out of the fact that their combined injury claims could exceed the single accident limit of $300,000 provided by Schmitt's automobile insurance policy. No conflict waiver forms were signed.
The judge found the conflicts of interest were "inconsequential," and applied the factors for allocating a contingent fee between two law firms discussed in LaMantia v. Durst, 234 N.J.Super. 534, 561 A.2d 275 (App.Div.), cert. denied, 118 N.J. 181, 570 A.2d 950 (1989). The judge concluded Brady had done the bulk of the work on the case and thus awarded Brady two-thirds of the Straubinger fee and Wallerstein one-third.
We agree in part and disagree in part with the judge's ruling and remand for a further hearing. It is fairly well established that an attorney's violation of the Rules of Professional Conduct (RPC) in connection with the representation of a client may jeopardize that attorney's right to collect fees for services rendered. In Cohen v. Radio-Electronics Officers Union, 146 N.J. 140, 155-56, 679 A.2d 1188 (1996), the Supreme Court stated:
[A]n attorney's freedom to contract with a client is subject to the constraints of ethical considerations and [the Supreme Court's] supervision....
Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided that the agreements satisfy both the general requirements for contracts and the special requirements of professional ethics. An otherwise enforceable agreement between an attorney and client would be invalid if it runs afoul of ethical rules governing that relationship.
[citations omitted].
At issue in Cohen was whether a one-year renewable retainer agreement between an attorney and client was enforceable. Supra, 146 N.J. at 144-45, 679 A.2d 1188. The retainer agreement provided that the client had to give the attorney six-months notice before termination. While the Court determined the agreement burdened the right of the client to discharge the attorney, the Court held that the attorney was entitled to recover in quantum meruit for the reasonable value of the services provided. Id. at 164, 679 A.2d 1188.
One panel of this court has, however, denied the right to recover fees under quantum meruit because the law firm violated RPC 1.5(c), which requires the attorney to obtain a written retainer agreement in contingent fee cases. Estate of Pinter v. McGee, 293 N.J.Super. 119, 126-28, 679 A.2d 728 (App.Div.1996). Other decided cases have permitted the recovery of fees on the basis of quantum meruit notwithstanding the failure to obtain a written contingent fee agreement. Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 340 N.J.Super. 104, 121-25, 773 A.2d 1176 (App.Div.) certif granted 169 N.J. 608, 782 *485 A.2d 426 (2001); Glick v. Barclays De Zoete Wedd, Inc., 300 N.J.Super. 299, 309-13, 692 A.2d 1004 (App.Div.1997); In re Estate of Travarelli, 283 N.J.Super. 431, 440, 662 A.2d 572 (App.Div.1995). We cite the above by way of example only because in this case it is clear that Brady secured written contingent fee agreements from both Straubinger and Gregoire.
In this case the issue is the proper apportionment of a contingent fee between two firms which succeeded one another during the course of a client's case, the first of which firms had potential conflicts of interest arising out of its representation of another client in the same case. RPC 1.7(a) prohibits a conflicting representation absent the consent of both clients when the representation of one client would be directly adverse to the other. RPC 1.7(b) prohibits a lawyer from representing a client if that representation may be materially limited by the lawyer's responsibility to another client, absent consent of the client.
Accordingly, in our view, the court faces a three part task in this matter. The judge is required to determine, first, whether there is a violation of any RPC; second, if found, the judge should determine what the nature, extent and degree of the violation is; and three, the judge must conclude what impact the violation has on the award of counsel fees guided by the considerations emerging out of the second task. In performing these tasks, it must be kept in mind that the Superior Court does not exercise any power to discipline attorneys. That jurisdiction lies exclusively in the Supreme Court under R. 1:20-1 to -23. The Superior Court's role in these matters is not regulatory or punitive. Its role is to resolve the counsel fee dispute and to consider and weigh any violations of the RPCs which may impact on the award of counsel fees. When this analysis is complete, the judge must then determine whether an award is warranted and, if so, how much is reasonable under all of the circumstances.
In this case, it appears that the judge found conflicts of interest but determined that they were "inconsequential". He thus, in effect, found that any violation of the RPCs had no impact on the allocation to Brady of a portion of the agreed contingent fee.
We initially agree with the judge that one source of potential conflict arising out of the representation of both driver and passenger was not, in this instance, of serious moment even though Brady should have discussed the conflict with both clients and obtained their written consent. RPC 1.7(a). One attorney may represent both the driver and a passenger as plaintiffs in a motor vehicle case provided it is clear that the other driver was completely responsible for the accident and the attorney complies with all of the disclosure and consent requirements. Whitman v. Estate of Whitman, 259 N.J.Super. 256, 612 A.2d 386 (Law Div.1992); DeBolt v. Parker, 234 N.J.Super. 471, 479, 560 A.2d 1323 (Law Div.1988); Michels, New Jersey Attorney Ethics, § 19:2-1(e)(3) (2002).
In the present case, the record supports Brady's judgment that liability rested solely with Schmitt. In addition, Gregoire was advised of the potential conflict, consented to it and indicated no wish to sue Straubinger. Finally, the judge pointed out that Brady had consulted defense counsel and discovered that he, "an experienced defense lawyer representing Ms. Schmitt analyzed the liability issue the same way as did Mr. Brady, that is, that the responsibility for the happening of the accident rested solely with defendant, Schmitt." The fact that the arbitrator determined that Schmitt was 100 percent liable while fixing plaintiffs' liability at zero *486 percent also supports the conclusion. Accordingly, we conclude the judge was correct in determining the potential conflict arising from representing driver and passenger was not a factor in apportioning the contingent fee in this case.
However, we cannot subscribe to the judge's view that the conflict arising out of the claims of Brady's clients, Straubinger and Gregoire, in Schmitt's single limits insurance coverage was "inconsequential." The judge mistakenly failed to consider RPC 1.8(g). It provides:
[a] lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, ... unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
An "aggregate settlement" includes any attempt to allocate the recovery of damages among two or more persons out of single limits insurance coverage. The N.J. Advisory Committee on Professional Ethics, Comm. Op. 248 (January 25, 1973), has written:
However, if it appears that there is insufficient or inadequate insurance coverage by the negligent driver to permit full payment to both plaintiffs, an attorney should reconsider his representation of both. Otherwise, he may be compromising the interests of one of the plaintiffs to the advantage of the other, while endeavoring to settle both claims at once.
Illustrative of the conflict in this case is an event which occurred after Straubinger engaged Wallerstein. Wallerstein went to the settlement conference before Judge Gallipolli at which the case was settled. In attendance, as well, was an attorney from Brady's office representing Gregoire. Wallerstein described what happened in his testimony at the plenary hearing on the fee dispute:
But in any event, [the attorney] was at the conference and we were talking to Judge Gallipoli about getting it resolved and then [the attorney] said well, Iand I said this is very strange, I have never tried a case where the defendants weren't really the opposition, but another plaintiff was. And you well, you know, we can try this case and we can show that your client's injuries weren't all from the accident and maybe they're not as bad as they should have been, at which point the conflict became very, very apparent.
We hold that as soon as Brady discovered or reasonably-should have discovered that Schmitt had a single limit policy and the claims of his two clients could, taken together, exceed the $300,000 policy limit, a conflict arose which required Brady to disclose the situation to his clients and obtain their consent to continue his representation of both parties. RPC 1.7(a)(2). He did neither.
Brady's conflict was clearly more than "inconsequential." The judge should have determined the nature and extent of the violation and its impact upon the proper allocation of the fee to be apportioned between the firms. The initial question is whether under the circumstances any of the fee should be allocated to Brady. In the case of violations of the RPCs which materially affect the value of the services to the client, there should be no hesitancy to deny fees. The determination is a fact sensitive one requiring weighing the nature and extent of the violation against the value of the services rendered and reflecting those considerations in the award.
*487 If the judge decides that some allocation may be made to Brady, then the award should reflect that the firms services were performed under a continuing cloud of conflict that inherently reduced their value. Brady was, for instance, duty bound to advocate a recovery for Gregoire which may well have depleted the balance of the coverage below that required to fairly compensate Straubinger. We, therefore, fail to see how Brady's conflict could not have affected the interest of Straubinger at the presentation of her case at the arbitration. Indeed, once free of the conflict, Straubinger achieved, through Wallerstein, a higher recovery from the available coverage than determined by the arbitrator. Since, in addition to work performed, the result achieved is a factor in considering an award of fees, RPC 1.5(a)(4), we conclude that the nature and length of Brady's conflict should be a significant determinant of the amount to which Brady is entitled.
We conclude that in other respects the judge properly applied the LaMantia criteria and, therefore, find no merit in the cross appeal. R. 2:11-3(e)(1)(E). We reverse the award of fees as apportioned by the trial judge. We remand for a rehearing to determine the proper allocation of the fee in dispute here in light of this opinion. Matters such as when the conflict arose and what impact it had on the services performed should be determined. Those considerations should then be reflected in the ultimate allocation. We do not retain jurisdiction.