**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0909-20

SUN YOUNG KIM,

    Plaintiff,

v.

WAL-MART STORES,
INC.,

    Defendant.

_____

Argued November 29, 2021 – Decided December 10, 2021

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2203-15.

David M. Wasserman argued the cause for pro se appellant Andrew Park, P.C.

Pasha Razi argued the cause for pro se respondent Jae Lee Law, P.C.

PER CURIAM

The Law Offices of Andrew Park, P.C. (the Park firm), successor counsel to plaintiff Sun Young Kim in this personal injury matter, appeals from an October 16, 2020 Law Division order allocating the $41,666.66 contingent fee earned between the Park firm and plaintiff's former counsel, Jae Lee Law, P.C. (the Lee firm).  Following a plenary hearing, the trial court determined the Lee firm was entitled to two-thirds of the fee ($27,777.78), and the Park firm was entitled to one-third of the fee ($13,888.88) based on a $125,000 settlement with defendant Wal-Mart Stores, Inc. (Wal-Mart) resulting from plaintiff's slip and fall accident at one of its stores.  For the reasons that follow, we dismiss the appeal.

I.

This matter comes before us for a second time.  The parties are familiar with the procedural history and facts of this case, and therefore, they will not be repeated in detail here.  Kim v. Wal-Mart Stores, Inc., No. A-3668-17 (App. Div. Mar. 28, 2019).  We remanded and directed the trial court to conduct a plenary hearing because there were facts in dispute as to the Lee firm's quantum meruit fee claim.  Specifically, we noted that the trial court did not conduct an analysis of the factors required under La Mantia v. Durst, 234 N.J. Super. 534, 540-41 (App. Div. 1989), or make findings of fact and conclusions of law under

2

Rule 1:7-4(a).[1]  In addition, we directed that the two law firms "submit certifications of services along with supporting documents" in advance of the plenary hearing.  Kim, slip op. at 10-11.

A plenary hearing was conducted on August 18 and 25, 2020, via Zoom. The trial court heard testimony from attorney Andrew Park, the managing partner at the Park firm; Martin Cedzidlo, an attorney employed by the Lee firm, who was primarily responsible for handling the matter; and Brian Park, an employee of the Lee firm for twenty-one years,[2] who is fluent in Korean and communicated with plaintiff during the pendency of the underlying personal injury matter.  The record shows the Park firm did not submit a certification of services with supporting documents, which was essential to the court's decision, but the Lee firm complied with our mandate.  At the hearing, Andrew Park testified he was "not sure" why his firm did not submit a certification of services detailing the time spent on the matter but conceded the time his firm spent on

---

[1]  Rule 1:7-4(a) provides for "Required Findings" and states: "The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right . . . ."

[2]  The record indicates that Brian Park testified he is a "claims manager" at the Lee firm.  In an email to plaintiff, he described his role as a "vice-president," which was the closest translation he could use for the Korean language.

A-0909-20

the matter was "less than" the time spent by the Lee firm. During appellate oral argument, counsel for the Park firm stated no time records were kept on this matter, and therefore, no certification of services could be submitted to the trial court.

On October 16, 2020, the trial court issued a twelve-page written opinion.[3] The court found the Lee firm filed a complaint against defendant Wal-Mart on May 21, 2015, and following an investigation and discovery, "procured a $125,000 settlement offer." The trial court also determined that on October 17, 2016, plaintiff discharged the Lee firm and retained the Park firm to assume the handling of her case. In an October 25, 2016 letter to the Park firm, the Lee firm stated:

> This letter will serve to confirm that your firm acknowledged our lien for services rendered to [plaintiff] and you agree that all attorney's fees shall be held in escrow pending an apportionment hearing before a Superior Court [j]udge or unless your firm and my firm reach an amicable apportionment agreement.
>
> [(alterations in original).]

The record is unclear as to whether plaintiff accepted or rejected the $125,000 settlement offer initially. Nevertheless, on November 17, 2016, Wal-

---

[3] The Park firm represents that the October 16, 2020 order was not served on the parties until October 23, 2020.

Mart filed a motion for summary judgment. The Lee firm prepared written opposition to Wal-Mart's motion because the Park firm had not officially been substituted as counsel of record for plaintiff. The Park firm alleges Brian Park, on behalf the Lee firm, inappropriately emailed plaintiff during the transition of her representation between the two law firms in violation of the Rules of Professional Conduct (RPC). According to the Park firm, Brian Park attempted to confuse plaintiff and give her a negative impression of the Park firm. However, no specific RPC's were cited.

On February 3, 2017, the trial court granted Wal-Mart's motion for summary judgment and dismissed plaintiff's complaint with prejudice. The law firms disputed who was responsible for this adverse result and were critical of each other's legal representation provided to plaintiff. The Park firm contends "it was forced to present a weak theory of liability" based on "inferred negligence and constructive knowledge by way of only circumstantial evidence." In contrast, the Lee firm claimed the Park firm "disavowed its theory of liability" under which the settlement offer was generated.

Following its grant of summary judgment, Wal-Mart withdrew the $125,000 settlement offer. The Park firm appealed the February 3, 2017 order. Thereafter, while plaintiff's appeal was pending, the Park firm engaged in

5

renewed settlement negotiations with Wal-Mart, and on June 6, 2017, the matter settled for $125,000.

The trial court found that Cedzidlo "worked on the file approximately 100 hours and his hourly rate is $450 per hour." Cedzidlo's certification of services stated that 94.89 hours were spent on the case for a total fee of $42,750.00.[4] In addition, Cedzidlo testified that the Park firm's handling of the matter "did not add value" to the case because defense counsel made the $125,000 offer prior to Wal-Mart's motion for summary judgment. He also "opined it was a mistake to argue mode of operation theory in opposition to the summary judgment motion" as asserted by the Park firm because Wal-Mart had "constructive and actual[] [notice] of the spilled item [i]n the aisle[,] which allegedly caused . . . plaintiff to fall and [the store] attempted to clean it up prior to [her] [accident]."

In addition, the trial court noted that Andrew Park testified "he did not know how much time was spent on the file" and "he did not spend much time on [it]." Andrew Park opined that the Lee firm "mishandled the case by not having a liability expert, not taking the depositions of the corporate representatives of Wal-Mart nor an employee on duty at the time of plaintiff's [incident]." No

---

[4] We note that $450 per hour times 94.89 hours equals $42,700.50. This mathematical discrepancy is not germane to our decision.

eyewitnesses were deposed either. In addition, the trial court emphasized that Park "repeated his testimony" about the Lee firm allegedly refusing to sign a substitution of attorney.

The trial court concluded there was "no inadequate representation" by the Lee firm, and no "harm" or delay was caused to plaintiff because the substitution of attorney was "signed by both law firms" and dated October 21, 2020. There was no evidence as to when the substitution of attorney was filed with the clerk's office, but the trial court noted the document "would have been accepted by the court" as of the date it was fully signed. However, the Park firm's attempt to file the substitution of attorney on December 16, 2016, was denied by a prior judge for "failure to comply with Rule 1:11-2(a)(2)"[5] because a January 3, 2017 trial date had been set.

In its decision, the trial court awarded two-thirds of the contingent fee to the Lee firm and one-third to the Park firm, plus interest and costs, which was

---

[5] Rule 1:11-2(a)(2) provides for "Withdrawal or Substitution" of attorney and provides, in pertinent part, that prior to "the fixing of a trial date in a civil action, an attorney may withdraw without leave of court only upon the filing of the client's written consent, a substitution of attorney executed by both the withdrawing attorney and the substituted attorney, a written waiver by all other parties of notice and the right to be heard, and a certification by both the withdrawing attorney and the substituted attorney that the withdrawal and substitution will not cause or result in delay." (Emphasis added.)

A-0909-20

the same apportionment it previously awarded on November 17, 2017. In finding "[t]he representation of firms was adequate," the trial court determined the "value produced by the Lee [f]irm was significant" because the $125,000 settlement offer was made prior to Wal-Mart's motion for summary judgment. By rejecting the offer and defending Wal-Mart's motion, the Park firm undertook a "risk [that] was significant" and "could have led to a zero recovery if the appeal was not won by the plaintiff or the offer was not restored." A memorializing order was entered. This appeal followed.

On appeal, the Park firm argues the trial court did not comply with our March 28, 2019 mandate and erred by arriving at the same result previously rendered on November 17, 2017. The Park firm further contends the trial court did not properly account for the relationship between the Lee firm's conduct of discovery and the grant of summary judgment to Wal-Mart, and the court disregarded the Lee firm's purported violation of the RPC's. The Lee firm seeks affirmance and asserts the Park firm's appeal should be dismissed as untimely under Rule 2:4-1(a) because it was filed on December 4, 2020, forty-nine days after the date stated on the order under review—October 16, 2020.

II.

At the outset, we address the Lee firm's argument that the Park firm's appeal was not timely filed. Rule 2:4-1(a) provides the appeal "must be filed within [forty-five] days of their entry." Rule 2:4-4(a) permits a maximum thirty-day extension of time, but only if the notice of appeal was actually "filed within the time as extended." Lombardi v. Masso, 207 N.J. 517, 540-41 (2011). When an "appeal is untimely, the Appellate Division [lacks] jurisdiction to decide the merits." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (quoting In re Hill, 241 N.J. Super. 367, 372 (App. Div. 1990)). It is well established "that when the time for taking an appeal has run the parties to a judgment have a vested right therein[,] which cannot subsequently be taken from them. . . . [I]t is of the utmost importance that at some point judgments become final and litigations come to an end." Hill, 241 N.J. Super. at 371 (second and third alterations in original) (quoting In Re Pfizer's Est., 6 N.J. 233, 239 (1951)).

The Park firm filed its appeal on December 4, 2020, forty-nine days after the October 16, 2020 date stamped "filed" on the order under review, and forty-two days after the October 23, 2020 date, when the order was entered and served

on the parties.[6] Typically, a notice of appeal that is filed out of time would be addressed by this court by way of a motion filed under Rule 2:8-2 based on a procedural defect. The Park firm did not move for leave to file its appeal out of time, Rule 2:4-4, and we are therefore constrained to dismiss the untimely appeal because we lack jurisdiction. Ricci, 448 N.J. Super. at 565. In any event, for the reasons that follow, we would otherwise affirm the court's order on the merits.

## III.

"Appellate review of a trial court's attorney fee determination is deferential. We will only disturb the trial court's determination on a showing of 'clear abuse of discretion' based on the record presented on the fee application." In re Est. of F.W., 398 N.J. Super. 344, 355 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine, 141 N.J. at 317). Similarly, we give deference to the

---

[6] The notice of appeal indicates that the trial court's order was entered on October 23, 2020. Our review of the record reveals this is the only place where the October 23, 2020 date appears rather than the October 16, 2020 filing date stamped on the order by the trial court. The Park firm did not include a copy of the notice of appeal in its appendix in violation of Rule 2:6-1(a)(1)(F).

factual findings of the trial court. See Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 483-84 (1974).

An attorney hired on a contingent fee basis, who is discharged or replaced before the matter is resolved, is not entitled to recover fees based on the contingent fee agreement. Glick v. Barclays De Zoete Wedd, Inc., 300 N.J. Super. 299, 310 (App. Div. 1997) (citations omitted). Instead, the trial court, in its discretion, may award the attorney a fee "on a quantum meruit basis for the reasonable value of the services rendered." Ibid. Quantum meruit, a form of quasi-contract, permits recovery of as much as is deserved. Kopin v. Orange Prods., Inc., 297 N.J. Super. 353, 367 (App. Div. 1997) (citation omitted).

In La Mantia, we enunciated the principles the trial courts should apply when determining the amount of a fee the court should award in these circumstances: (1) "the length of time each of the firms spent on the case relative to the total amount of time expended to conclude the client's case"; (2) "[t]he quality of that representation"; (3) "the result of each firm's efforts"; (4) "the reason the client changed attorneys"; (5) the "[v]iability of the claim at transfer"; (6) and "[t]he amount of the recovery realized in the underlying lawsuit." 234 N.J. Super. at 540-41. We emphasized that when a court deals with equitable

principles "such as quantum meruit, hard and fast rules are difficult to apply, let alone construct." Id. at 539-40.

In Glick, Justice (formerly Judge) Long provided guidance to courts for resolving future disputes:

> [T]he crucial factor in determining the amount of recovery is the contribution which the lawyer made to advancing the client's cause. Thus, if a retiring lawyer cedes to his successor a substantially prepared case which resulted from an extensive investment of time, skill and funds, the retiring lawyer might be entitled to compensation greater than the standard hourly rate. In comparison, if a ceding lawyer's work contributed to a recovery by the client, but the new attorney was crucial in the success of the case, then the predecessor's compensation should be based, at most, upon a standard hourly rate. Finally, if the predecessor's work, no matter how extensive, contributed little or nothing to the case, then the ceding lawyer should receive little or no compensation.
>
> [Glick, 300 N.J. Super. at 310-11(internal citations omitted).]

In this appeal, there is no dispute that plaintiff retained both law firms on a contingent fee basis. No retainer agreements were provided by either firm or moved into evidence; however, based on the record presented, it is undisputed that the contingent fee amount would equal one-third of any ultimate recovery by plaintiff.

Here, the trial court properly recognized that the allocation of the fee should be based on the principles enunciated in La Mantia as we directed. As to factor one, the trial court found the Park firm "did not submit a [c]ertification of [s]ervices, contrary to the requirement of the Appellate Division," but "[t]he court . . . assume[s] the Park firm did some work in this matter" and would "not assume no hours . . . simply because there was no [c]ertification of [s]ervices filed." We have previously held that the failure to submit time records in support of an application for a reasonable fee "is not fatal" to the application. Estate of F.W., 398 N.J. Super. at 356-57. However, where, as here, a firm is seeking an allocation of fees, an affidavit or certification of services is required. See Quereshi v. Cintas Corp., 413 N.J. Super. 492, 500 (App. Div. 2010) (citations omitted). No less is required when a firm asks the court to apportion the fees based on equitable principles.

Notwithstanding this deficiency, the trial court indulged the Park firm, indicating it was clear it had at least "filed a [s]ubstitution of [a]ttorney, appeared at the summary judgment motion" after oppos[ing] the motion in writing, "filed an appeal," "and secured a $125,000 settlement." The record contains sufficient credible evidence to support that finding.

A-0909-20

As to factor two, the trial court credited both law firms for their role in procuring the $125,000 settlement offer. The court highlighted this demonstrated adequate representation by each firm. Despite the Park firm's assertion that the Lee firm's unsatisfactory discovery efforts, namely failing to depose Wal-Mart employees or retain a liability expert, were the direct cause of summary judgment being granted against plaintiff, Andrew Park testified to the contrary. He opined that the evidence provided in the file by the Lee firm at the time plaintiff's representation was transferred to the Park firm was likely sufficient to reverse the summary judgment decision on appeal. Therefore, the trial court was correct in concluding that the question of which firm was responsible for the case being dismissed by way of summary judgment was irrelevant.

As to factor three, the trial court emphasized that the Lee firm performed a substantial amount of work leading to the initial $125,000 settlement offer, prepared the opposition to Wal-Mart's summary judgment motion, and had the matter trial-ready. On the other hand, the Park firm revived the settlement offer after filing a notice of appeal. The trial court was correct in its analysis that the Lee firm completed more work for plaintiff than the Park firm did.

14

As to factor four, the reason plaintiff changed attorneys is unknown as no evidence was elicited on this factor, and in any event, it has no bearing on the analysis. As to factor five, the trial court properly found plaintiff's claim was "viable" because the Lee firm secured a $125,000 settlement offer, and the Park firm later revived it. As to factor six, the amount recovered—$125,000—appears to have been reasonable for a challenging case on the issue of liability.

Moreover, no documents or factual information was presented at the plenary hearing for the trial court to evaluate whether the settlement amount could have been higher but for the alleged inadequate representation by the Lee firm. And, the trial court was not made aware of the severity of plaintiff's injuries or her out-of-pocket expenses. Plaintiff did not testify at the plenary hearing. Accordingly, we conclude that the trial court applied the principles set forth in La Mantia, made appropriate findings of fact and conclusions of law in accordance with Rule 1:7-4(a), and did not abuse its discretion.

IV.

Finally, the Park firm contends the Lee firm breached one or more unspecified RPC's during the course of the underlying litigation and that the trial court failed to explore the extent and potential impact of the alleged breaches in determining the fee allocation. We are not persuaded.

The Park firm's reliance on our holding in <u>Straubinger v. Schmitt</u>, 348 N.J. Super. 494 (App. Div. 2002), is misplaced. There, two firms disagreed on the apportionment of attorney's fees where representation had occurred on a contingent basis, and one firm had potentially breached an RPC. <u>Id.</u> at 501. However, in <u>Straubinger</u>, the attorney represented both the plaintiff driver and plaintiff passenger in a personal injury automobile suit, raising a potential conflict of interest in violation of RPC 1.7. <u>Ibid.</u> The conflict of interest could have substantially impacted the settlement value of the case for one of the plaintiffs, and in turn, the legal fee owed. <u>Id.</u> at 504. Initially, the trial judge in <u>Straubinger</u> found the breach "inconsequential," but we reversed and remanded for a proper analysis of the impact the RPC violation had on the amount recovered and the appropriate apportionment of fees. <u>Id.</u> at 504-05.

We note an important passage from our opinion in <u>Straubinger</u>, quoted by the Park firm, in its brief:

> The Superior Court's role in these matters is not regulatory or punitive. Its role is to resolve the counsel fee dispute and to consider and weigh any <u>violations of the RPCs which may impact on the award of counsel fees</u>. When this analysis is complete, the judge must then determine whether an award is warranted and, if so, how much is reasonable under all of the circumstances.
>
> [<u>Id.</u> at 502 (emphasis added).]

16

In Straubinger, we recognized the RPC violation directly impacted the award of counsel fees because the conflict of interest could have substantially impacted the damages ultimately recovered. However, here, the alleged RPC violation does not have the same potential to significantly alter the value of the case, or the resulting attorney's fees. The trial court emphasized Brian Park sent the subject email to plaintiff on December 28, 2016, and the motion to be relieved as counsel was granted on December 16, 2016. The court found "the Lee [f]irm may not have understood they had been removed from the case" and "[n]o facts to the contrary" were provided by the Park firm. Thus, we discern no basis to disturb the trial court's decision.

To the extent we have not addressed the Park firm's other arguments, it is because they are without merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0909-20