64 A.3d 592

SCHEPISI & MCLAUGHLIN, P.A., PLAINTIFF–RESPONDENT, v. CARMINE LOFARO, LOFARO & REISER, LLP, AND EAST WEST PRECIOUS METALS OF NEW YORK, DEFENDANTS, AND GAMBOURG & BORSEN, INTERESTED PARTY, AND SLAVA KORNILOV, INTERESTED PARTY–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 2, 2012—Decided April 29, 2013.

Before Judges MESSANO, OSTRER and KENNEDY.

*Gambourg & Borsen, LLC,* attorneys for appellant Slava Korni-lov (*Andrew Borsen* and *Aarti Bridgelal,* on the brief).

*Schepisi & McLaughlin, P.A.,* respondent pro se (*Glenn M. Finkel* and *Christopher A. Stewart,* on the brief).

The opinion of the court was delivered by

KENNEDY, J.A.D.

This appeal arises from a dispute between a creditor and the debtor's former attorney over entitlement to funds held in a trust account. The funds were apparently recovered by the creditor in an action he brought in Florida against both the debtor and a Florida corporation that owed the debtor money. The debtor hired counsel to represent it after the creditor obtained judgment against the debtor in New Jersey. When the creditor sought to collect on the judgment by bringing the suit in Florida against the Florida corporation, the debtor entered into a "contingency agreement" with its counsel for representation respecting the "unlawful retention" of money owed by the Florida corporation. The agree-

ment provided for a fee based on a percentage of "money recovered for" the debtor.

We reverse the orders of the Law Division releasing the disputed funds to debtor's former counsel and remand the matter to the Law Division for further proceedings consistent with our opinion.

I.

Slava Kornilov (Kornilov), a New Jersey resident, purchased two diamonds from East West Precious Metals of New York, Inc. (East West) for $245,865. When Kornilov did not receive the diamonds, he filed suit in Bergen County against East West seeking damages and injunctive relief (the New Jersey Action). Kornilov moved for default judgment after East West failed to answer or otherwise move with respect to the complaint. Kornilov's motion was granted on January 8, 2010, and the court ordered East West to give the diamonds to Kornilov within ten days, failing which Kornilov would be entitled to "place a hold" of $245,865 "[o]n any bank account held by East West in a Constructive Trust [sic]...."

Two weeks later, after East West failed to deliver the diamonds, Kornilov filed a verified complaint in the Circuit Court of the 11th Judicial Circuit of Florida (the Florida Action) upon discovering East West was owed $253,972.33 by a Florida corporation, Republic Metals Corporation, Inc. (Republic). East West was also named as a party defendant in the Florida Action, which sought to recover and impose a "constructive trust" for the benefit of Kornilov on the money Republic owed to East West.

East West had earlier retained Schepisi & McLaughlin, P.A. (Schepisi) on an hourly basis to represent it in the New Jersey Action. Apparently, after learning of the pendency of the Florida Action, East West signed a second agreement with Schepisi agreeing to pay Schepisi a contingent legal fee based upon a percentage of "money recovered" for East West on the "unlawful retention" of money "due and owing" by Republic. By the time the agreement was entered, the Florida complaint had already

been filed. Schepisi never entered an appearance in the Florida Action, although a Florida lawyer, Aaron Resnick, did file a "Notice of Limited Appearance" on behalf of East West in order to permit him to attend a status conference in that action scheduled for March 4, 2010. Further, the record does not contain a copy of any pleadings or cross-claims filed by East West in the Florida Action, if, indeed, any were filed at all.

After Kornilov brought the Florida Action against Republic and East West, East West filed a motion in New Jersey to vacate the order of January 8, 2010. Shortly thereafter, Kornilov, East West and Republic reached a settlement in the Florida Action whereby Republic agreed to pay the money it owed and forward $253,972.33 to New Jersey counsel. A stipulation filed in the Florida action recited that Kornilov had commenced the action to establish a "constructive trust" on the money Republic owed to East West and that while Republic "ha[d] no interest" in the money, it "[could not] safely" abide by an order in the New Jersey Action until that order was "domesticated in the State of Florida." The parties then stipulated that Republic would be released from further liability upon paying over the funds as agreed. The Florida Circuit Court dismissed the Florida Action on April 19, 2010, but "retain[ed] jurisdiction to enforce the terms of the settlement agreement."

An order was entered in the New Jersey Action on March 10, 2010, vacating the order of January 8, 2010, and requiring Republic to transfer $253,972.33 to Schepisi's attorney trust account, out of which $245,865 was to be held in escrow in that trust account pending further order of the court.[1] The same day, East West filed its answer to the complaint in the New Jersey Action.

Thereafter, Kornilov and East West filed cross-motions in the New Jersey Action to release the funds from Schepisi's attorney trust account to each party. The motion court denied both motions on June 30, 2010, and denied East West's motion for

---

[1] Republic was not a party to the New Jersey Action.

reconsideration on October 5, 2010. On December 3, 2010, an order was entered relieving Schepisi as counsel for East West in the New Jersey Action, after East West represented to Schepisi that it could no longer pay its legal fees, and ordering an "attorney's charging lien on any sums received" by East West. The order provided that the amounts due Schepisi would be determined by the court at the end of trial.[2]

Following Schepisi's withdrawal as counsel, East West retained LoFaro & Reiser, LLP (LoFaro). LoFaro negotiated a settlement of the New Jersey Action between East West and Kornilov whereby East West agreed to pay Kornilov the sum of $245,865 and Schepisi would be required to transfer that amount from its attorney trust account to the trust account of Kornilov's attorneys, Gambourg & Borsen, LLC (Gambourg). On February 10, 2011, LoFaro forwarded Schepisi a consent order dated February 9, 2011, entered by the court and executed by both Kornilov and East West, memorializing these terms.

In response, Schepisi filed an order to show cause and a verified complaint against LoFaro and East West as defendants, and Kornilov and Gambourg as "interested parties," seeking to vacate the consent order. The verified complaint asserted that East West and LoFaro obtained the February 9, 2011, consent order through "misrepresentation," and thereby impaired Schepisi's right to collect fees from East West "arising out of the charging lien and contingency agreement." In a second count, Schepisi claimed it was owed a contingency fee on the $253,972.33. Later, Schepisi dismissed its claims against LoFaro "without prejudice."

Prior to the adjourned return date of the Order to Show Cause, the parties executed a consent order dated April 7, 2011, whereby Schepisi agreed to release $141,671.30 from its attorney trust account to Gambourg. The remaining funds–$104,193.70–were to stay in Schepisi's attorney trust account pending further court

---

[2] This order was entered as "unopposed." We have not been provided with copies of the motion, however.

order. The $104,193.70 represented attorney's fees Schepisi claimed East West owed the firm as a result of its representation of East West in the Florida Action and the New Jersey Action.

On April 12, 2011, the court ordered that the remainder of the funds in Schepisi's attorney trust account be released to Schepisi pursuant to the "contingent fee agreement." [3] In a written rider to the order, the motion judge explained that "Schepisi ... successfully resolved" the Florida Action and "[t]he issue now is whether the settlement, memorialized in the consent order, can be fully complied with" in view of the dispute over Schepisi's claim of entitlement to collect its contingency fee from the funds. The motion judge acknowledged Kornilov's argument that Schepisi "performed very little work" in the Florida action, but concluded that "the December 3, 2010, order and the contingent fee agreement demonstrate that Schepisi" is entitled to payment of its claimed contingent fee. The motion judge added that the February 9, 2011 consent order "cannot be used to subvert the contingency fee agreement."

Kornilov filed a motion for reconsideration, which was denied.[4] This appeal followed.

## II.

Kornilov contends that the funds in the attorney trust account belong to him pursuant to the settlement of the New Jersey Action and consent order executed by the court. Kornilov further

---

[3] Neither party stated precisely what precipitated entry of the order of April 12, 2011. Presumably, it was the return date of the order to show cause. On April 7, 2011, the motion court heard oral argument from the parties and did not conduct an evidentiary hearing. Further, the order of April 12, 2011, did not "vacate" the earlier consent order of February 9, 2011, as originally sought by the verified complaint.

[4] Having not been provided with a judgment or order of dismissal in either the New Jersey Action or the action commenced by Schepisi, it is unclear to us whether the actions are still pending in the trial court of if the actions have been dismissed by final judgment. *See R.* 2:2–3(a)(1).

argues that the motion judge erred by failing to abide by the requirements of the Attorney Lien Act, *N.J.S.A.* 2A:13–5, and *Rule* 1:20A–6. Specifically, Kornilov contends that no valid attorney's lien existed because: (1) the trial court did not have jurisdiction to establish an attorney's lien because Schepisi failed to file its lawsuit to recover a fee in the forum where the lien arose; (2) there was no final recovery by East West to which an attorney's lien could attach; and (3) Schepisi failed to provide East West with a Pre–Action Notice in accordance with *Rule* 1:20A–6.

Schepisi argues that it is entitled to 33–1/3% of the funds in its attorney trust account based on the contingent fee agreement associated with the work it performed for East West. Schepisi further maintains that Kornilov has failed to demonstrate that (1) the trial court's decision was arbitrary, capricious, or unreasonable; (2) the trial court failed to consider all probative evidence; or (3) there are new facts that were not known at the time of the prior order which may be relevant to this matter.

We begin by setting forth general principles that govern liens. Until recently, our courts have recognized "two forms of liens for the collection of fees, the charging (or special) lien and the retaining lien." Michels, *New Jersey Attorney Ethics* § 37:2–2a at 910 (2013).[5]

The common-law charging lien is for "services rendered in a particular cause of action and ... attaches to the judgment in the cause for which the services were rendered." *Brauer v. Hotel Assocs., Inc.,* 40 *N.J.* 415, 420, 192 *A.*2d 831 (1963) (citation omitted), *cert. denied,* 387 *U.S.* 944, 87 *S.Ct.* 2077, 18 *L.Ed.*2d 1330 (1967). The charging lien is "a right recognized at common law as rooted in equitable considerations, although not a lien in the true sense of a right resting in the possession, actual or constructive, of

---

[5] As of April 1, 2013, pursuant to an amendment to *Rules of Professional Conduct* 1.16(d), lawyers are no longer able to assert the "common law retaining lien[,]" enabling attorneys to hold onto client files and papers to collect fees. In any event, that rule would not apply retroactively here.

the thing upon which it operates." *Republic Factors, Inc. v. Carteret Work Uniforms,* 24 *N.J.* 525, 534, 133 *A.*2d 6 (1957) (citation omitted).

■ It has been termed as " 'merely a claim to the equitable intervention of the court' for the attorney's 'protection, when, having obtained judgment for his client, there is a probability of the client depriving him of his costs.' " *Ibid.* (citations omitted). *Accord Cole, Schotz, Bernstein, Meisel & Forman, P.A. v. Owens,* 292 *N.J.Super.* 453, 460, 679 *A.*2d 155 (App.Div.1996) (citation omitted) (stating same). In other words, the common-law charging lien "is a judicial device to protect the attorney's rights where he has been unable to get possession; to this end the attorney is considered an equitable assignee of the judgment to the extent of his debt." *Republic Factors, supra,* 24 *N.J.* at 534, 133 *A.*2d 6 (citations omitted). *Accord Horowitz v. Weishoff,* 318 *N.J.Super.* 196, 206, 723 *A.*2d 121 (App.Div.1999) (citation omitted), *opinion corrected on recon.,* 346 *N.J.Super.* 165, 787 *A.*2d 236 (App.Div. 2001).

*N.J.S.A.* 2A:13–5 not only modified the charging lien that existed at common law, but also " 'expand[ed] the common law lien which had attached only to a judgment.' " *Musikoff v. Jay Parrino's the Mint, L.L.C.,* 172 *N.J.* 133, 139, 796 *A.*2d 866 (2002) (quoting *Martin v. Martin,* 335 *N.J.Super.* 212, 222, 762 *A.*2d 246 (App.Div.2000) (citation omitted)). *N.J.S.A.* 2A:13–5 provides, in pertinent part, that an attorney appearing for a client in any action asserting a claim, "shall have a lien for compensation, upon his client's [claim]" which shall attach to any "verdict, report, decision, award, judgment or final order in his [or her] client's favor, and the proceeds thereof in whosesoever hands they may come." *See also* Michels, *supra,* § 37:2–2(b)(2) at 912–14 (describing expansive character of lien).

The statute's reach, however, is not unlimited. *Musikoff, supra,* 172 *N.J.* at 139, 796 *A.*2d 866. There is no authorization for "an attorney's lien to be asserted for post-judgment legal services." *Panarello v. Panarello,* 245 *N.J.Super.* 318, 322, 585 *A.*2d 428

(Ch.Div.1990). *Cf. Steiger v. Armellino,* 315 *N.J.Super.* 176, 180, 716 *A.*2d 1216 (Ch.Div.1998) (holding that the statute did not prevent a lien from attaching to a subsequent matter that stemmed from original pleadings).

Furthermore, "[w]here there is no recovery, there is nothing to which the attorney's lien can attach." *Cole, Schotz, supra,* 292 *N.J.Super.* at 460, 679 *A.*2d 155. *See also Wheeler v. Wheeler,* 52 *N.J.Super.* 504, 508, 145 *A.*2d 796 (App.Div.1958) (holding the statute "by its very terms [was] not applicable since plaintiff recovered nothing to which her attorney's lien could attach"); *Cole v. Cole,* 30 *N.J.Super.* 433, 435–38, 104 *A.*2d 866 (Ch.Div.1954) (where the parties reconciled, there was no decree favorable to either party and, therefore, no valid charging lien could be asserted by the attorney).

After the enactment of *N.J.S.A.* 2A:13–5, we noted that the statute did not set out a specific procedure for determining and enforcing an attorney's lien. *H. & H. Ranch Homes, Inc. v. Smith,* 54 *N.J.Super.* 347, 353, 148 *A.*2d 837 (App.Div.1959). We then devised the following procedure:

> The attorney should make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth the facts upon which he relies for the determination and enforcement of his alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of such order, together with a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division. . . .
>
> [*Ibid.*]

This procedure must be considered in light of *Rule* 1:20A–6, "Pre–Action Notice to Client," which states in pertinent part:

> No lawsuit to recover a fee may be filed until the expiration of the 30 day period herein giving Pre–Action Notice to a client; however, this shall not prevent a lawyer from instituting any ancillary legal action. . . . The notice shall specifically advise the client of the right to request fee arbitration and . . . that if the client does not promptly communicate with the Fee Committee secretary and file the approved form of request for fee arbitration within 30 days after receiving pre-

action notice by the lawyer, the client shall lose the right to initiate fee arbitration. The attorney's complaint shall allege the giving of the notice required by this rule or it shall be dismissed.

In *Cole, Schotz, supra,* 292 *N.J.Super.* at 459, 679 *A.*2d 155, we held an attorney's lien invalid when the plaintiff "moved for the imposition of a lien instead of filing a complaint or giving Pre–Action Notice." This is because a client should have the opportunity to request fee arbitration under the Rules. In that case, the fee arbitration committee determines the amount of the attorney's lien. *R.* 1:20A–3. If the client does not request fee arbitration, the court will conduct a plenary hearing in order to resolve the lien dispute. *Cole, Schotz, supra,* 292 *N.J.Super.* at 458, 679 *A.*2d 155. The Pre–Action Notice requirement applies to a petition to establish an attorney's lien as well as to a complaint for attorney's fees. New Jersey law is clear that in the absence of compliance with the Rule, such a petition must be dismissed. *Mateo v. Mateo,* 281 *N.J.Super.* 73, 79, 656 *A.*2d 846 (App.Div. 1995) (citing *Rosenfeld v. Rosenfeld,* 239 *N.J.Super.* 77, 570 *A.*2d 1026 (Ch.Div.1989)).

### III.

With these principles guiding our analysis, we reverse the orders of April 12 and June 13, 2011, and remand the matter to the Law Division for further proceedings. It appears that Schepisi failed to comply with our court rules governing charging liens, and, further, in these circumstances, the terms of the contingency fees may not provide the proper measure of Schepisi's compensation, assuming Schepisi is entitled to any compensation at all. An evidentiary hearing is required to resolve these issues and to ascertain what, if any, services Schepisi performed that would warrant a fee.

Initially, we observe that a substantial question exists as to the validity of the "charging lien" in view of Schepisi's apparent failure to comply with *Rule* 1:20A–6. *Cole, Schotz, supra,* 292 *N.J.Super.* at 458, 679 *A.*2d 155. Also, we are uncertain whether

Schepisi ever filed a "pleading containing a ... cross-claim" on behalf of East West in the Florida Action. *See N.J.S.A.* 2A:13–5. The lien arises on the filing of a claim, attaches to the judgment or recovery, and does not depend on the attorney actually conducting the trial. *H. & H., supra,* 54 *N.J.Super.* at 352, 148 *A.*2d 837. It is not affected by a settlement and is not terminated by the consensual substitution of counsel. *Ibid.* Under the statute, attorneys "are entitled to a lien as of the date of the filing of the complaint, which lien cannot be affected by a settlement between the parties." *Guernsey v. Young,* 49 *N.J.Super.* 339, 340, 139 *A.*2d 799 (Ch.Div.1958).

There appears to be no verdict, report, decision, award, decree, judgment or final order in East West's favor in either the New Jersey Action or the Florida Action.[6] *See N.J.S.A.* 2A:13–5. The order permitting Schepisi to withdraw from representation stated only that Schepisi would have an attorney's charging lien "on any sums received by ... East West...." With the exception of the $8,287.33, being the difference between the $253,972.33 that was transferred from Republic to Schepisi's attorney trust account and the $245,685 that was to be released to Kornilov pursuant to the February 9, 2011 consent order, East West appears to have received no funds as a result of either the New Jersey Action or the Florida Action.

Moreover, the Court in *Musikoff, supra,* 172 *N.J.* at 146, 796 *A.*2d 866, specifically "affirm[ed] the basic elements of the process

---

[6] Although an argument can be made that Schepisi should have pursued its lien in the Florida Action, *see N.J.S.A.* 2A:13–5, we choose not to require the parties to litigate this issue in two forums. The fund at issue is in New Jersey, and hence subject to our jurisdiction. *See R.* 4:42–9; *Henderson v. Camden Cnty. Mun. Util. Auth.,* 176 *N.J.* 554, 564–65, 826 *A.*2d 615 (2003). *Cf. Am. Auto. Ins. Co. v. Niebuhr,* 124 *N.J. Eq.* 372, 375, 2 *A.*2d 46 (Ch.1938) (where "there is brought into chancery for distribution a fund on which an attorney claims the statutory lien for services in another court, chancery has jurisdiction to determine the validity of the claim and to enforce the lien by payment out of the fund." (citations omitted)). In such a case, the enforcement of an attorney's charging lien "is within the equitable jurisdiction of courts of law" as well. *Norrell v. Chasan,* 125 *N.J. Eq.* 230, 236, 4 *A.*2d 88 (E. & A.1939).

articulated in *H. & H.*, except ... [it did] not interpret the process to require an attorney to file and enforce a lien petition prior to settlement or judgment of the underlying action." This procedure requires, at the very least, a plenary hearing to resolve relevant, factual disputes. Here, a factual dispute exists as to the extent of the services performed by Schepisi, if any, in the Florida Action pursuant to the contingency fee agreement, and whether, in these circumstances, East West "recovered" anything at all against which Schepisi's fee claim would attach. All of these issues require a plenary hearing, which was not undertaken here. *H. & H., supra,* 54 *N.J.Super.* at 353, 148 *A.*2d 837.

Kornilov instituted the Florida Action upon discovery that Republic owed East West funds in Florida. The Florida Action sought to sequester funds to satisfy a Writ of Execution obtained by Kornilov against East West in the New Jersey Action. It was Kornilov, not Schepisi or its client East West, who initiated suit for collection of funds in Florida. In fact, East West was a defendant in the Florida Action and Schepisi did not appear of record as counsel for East West in the Florida Action.

Kornilov, as plaintiff, appears to have successfully obtained the funds in Florida, and, pursuant to the settlement agreement, the funds were transferred to Schepisi's attorney trust account. This settlement agreement was intended to make Kornilov whole, after East West allegedly took $245,865 from Kornilov but failed to deliver the diamonds. Schepisi then moved to be relieved as counsel before the trial on the Kornilov claim. East West thereafter settled with Kornilov by agreeing to pay $245,865 to him.

Having arguably recovered nothing for East West, Schepisi would not be entitled to recover its contingent legal fee from the money recovered from Republic by the efforts of Kornilov. The assertion of a "charging lien" on funds Schepisi did not recover does not create entitlement to fees it was not entitled to receive in the first instance. *Wheeler, supra,* 52 *N.J.Super.* at 508, 145 *A.*2d 796. Moreover, to the extent Schepisi is owed any money by East

West, Schepisi would have had to pursue such fees from East West pursuant to a proceeding that complies with *Rule* 1:20A–6.

■ Finally, having successfully moved to be relieved as counsel in the New Jersey Action, we question whether the contingency agreement remains the proper measure of Schepisi's entitlement to compensation, even assuming it can show it actually "recovered" money "on behalf of" East West.

> An attorney hired on a contingent fee basis and later discharged before completion of the services is not entitled to recover fees on the basis of such contingent agreement; instead, he or she may be entitled to recover on a *quantum meruit* basis for the reasonable value of the services rendered.

> [*Glick v. Barclays De Zoete Wedd, Inc.,* 300 *N.J.Super.* 299, 310, 692 *A.*2d 1004 (App.Div.1997) (citations omitted).]

*See also Kopin v. Orange Prods. Inc.,* 297 *N.J.Super.* 353, 367, 688 *A.*2d 130 (App.Div.) (quantum meruit is proper measure of a former law firm's compensation for services rendered on a case that has been removed from its office), *certif. denied,* 149 *N.J.* 409, 694 *A.*2d 194 (1997); *La Mantia v. Durst,* 234 *N.J.Super.* 534, 537, 561 *A.*2d 275 (App.Div.) (same), *certif. denied,* 118 *N.J.* 181, 570 *A.*2d 950 (1989); *Fuessel v. Cadillac Bar Corp.,* 63 *N.J.Super.* 430, 436, 164 *A.*2d 821 (App.Div.1960) (same), *certif. denied,* 34 *N.J.* 65, 167 *A.*2d 54 (1961). " 'Quantum meruit' simply means 'as much as he deserves[,]' " and "enables the performing party to recover the reasonable value of services he/she rendered." *Kopin, supra,* 297 *N.J.Super.* at 367, 688 *A.*2d 130. Numerous cases describe quantum meruit as rooted in equitable principles. *See, e.g., ibid.* (quantum meruit relief rests on an equitable foundation); *La Mantia, supra,* 234 *N.J.Super.* at 539, 561 *A.*2d 275 (same).

Because no hearings were held to consider these issues, or to ascertain what, if anything, Schepisi did to recover money in the Florida Action and for whom, we are compelled to reverse the orders on appeal and remand to the trial court for further proceedings consistent with our opinion. The record before us is too unclear to permit further appellate review.

Accordingly, the Law Division's April 12, 2011 and June 13, 2011 orders are vacated and the matter is remanded to the Law Division.  We do not retain jurisdiction.