**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0573-19T4

JENNIFER A. MACHEMER,

     Petitioner,

v.

CHILDREN'S SPECIALIZED
HOSPITAL,

     Respondent.

_____

IN THE MATTER OF WYSOKER,
GLASSNER, WEINGARTNER,
GONZALEZ & LOCKSPEISER,
PA,

     Appellant.

_____

          Argued November 10, 2020 – Decided December 21, 2020

          Before Judges Yannotti and Natali.

          On appeal from the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2014-31331.

Benjamin D. Lockspeiser argued the cause for appellant (Wysoker, Glassner, Weingartner, Gonzalez & Lockspeiser, PA, attorneys; Benjamin D. Lockspeiser, on the briefs).

Larry M. Radomski argued the cause for respondent Larry M. Radomski.

PER CURIAM

Wysocker, Glassner, Weingartner, Gonzalez & Lockspeiser, P.A., (the firm) appeals from an order entered by the Division of Workers' Compensation (Division) on October 7, 2019, which approved a settlement between the parties and awarded petitioner's attorney, Larry M. Radomski, 60% and the firm 40% of the approved counsel fee. For the reasons that follow, we reverse the judge's order and remand the matter to the Division for further proceedings.

The record reveals the following. On October 1, 2014, the firm filed a claim in the Division on behalf of petitioner against her employer, respondent Children's Specialized Hospital (CSH), for injuries petitioner allegedly sustained in the workplace. At the time the claim petition was filed, Radomski was an associate with the firm.

It appears that Radomski began working on the case in July 2015, when he wrote a letter to the compensation judge responding to a motion by CSH to dismiss the petition for failure to comply with the applicable statute of

2

limitations. Thereafter, Radomski appears to have been the only attorney at the firm who worked on the case. According to Radomski, he handled discovery, scheduled physical examinations, and dealt with adjournment requests.

When trial in the matter began on July 23, 2018, Radomski handled the trial proceedings, during which petitioner testified and was cross examined. Radomski asserts that the proceedings lasted about three or four hours, after which he participated in a conference with the judge in the judge's chambers. The judge's written comments in the online docket regarding the trial and conference indicate that she recommended a settlement of 37.5 %.

Thereafter, the judge adjourned the matter several times to allow CHS's attorney to seek additional medical records. In February 2019, the firm terminated Radomski, and petitioner retained him to continue as her attorney in the case. On April 10, 2019, Radomski and the firm filed a substitution of attorney, which included a notice that the firm was asserting an attorney's lien for fees earned while it handled the matter.

On May 1, 2019, Allan L. Lockspeiser, an attorney with the firm, sent a letter to the judge stating that the letter was to "serve" as the firm's "official" attorney lien. Lockspeiser stated that the firm had worked on the file since 2012 and negotiated a settlement of 35% partial total disability. He asserted that

Radomski's fee should be based on the petitioner recovering "[a]nything above that amount moving forward, . . . "  As noted, however, the judge's notes indicate that she recommended a settlement of 37.5%.

It appears that CHS then sought additional medical records and, according to Radomski, refused to obtain settlement authority for the judge's recommendation.  CHS also issued a notice in lieu of subpoena to Radomski requiring that petitioner appear and testify at a hearing, which was scheduled for July 15, 2019.  CHS also asked the judge for permission to reschedule the disability examinations, asserting that the prior examinations were "stale by operation of law and [could] no longer be relied upon."

The parties appeared for the hearing on July 15, 2019.  Radomski opposed CHS's requests for additional testimony and examinations.  The judge denied CHS's request to compel petitioner to provide additional testimony.  However, the judge required petitioner to submit to new medical examinations.  Thereafter, CHS and Radomski took steps to schedule the additional examinations.

On September 17, 2019, CHS's attorney informed Radomski that he had obtained authority to settle the matter for 37.5% partial total disability.  Petitioner accepted the offer.  At a hearing on October 7, 2019, the settlement

4

was placed on the record and accepted by the judge. At that hearing, the judge also heard oral arguments regarding the firm's application to enforce its attorney's lien.

Lockspeiser told the judge that the firm worked on the matter since 2014 when it conducted the initial intake. He said the firm handled correspondence, filed the claim petition, collected medical records, scheduled medical exams, and participated in trial on July 23, 2018, where petitioner testified. He asserted that, while the firm was handing the case, the judge recommended a settlement of 35% partial total permanent disability.

Lockspeiser stated that counsel fees are based on the work the attorneys perform, and Radomski had handled the matter as superseding attorney for less than six months. He said Radomski took over a case that had been substantially prepared at the firm. He noted that discovery had been completed, doctors' reports compiled, petitioner's testimony taken, and the judge had made a settlement recommendation.

Lockspeiser asserted that based on the status of the case, the firm was entitled to a reasonable counsel fee because it had performed a significant amount of the work which led to the judge's settlement recommendation. He

A-0573-19T4

said Radomski's fee should be commensurate with what he said was a 2.5% increase in the settlement proposal that the parties ultimately accepted.

Radomski argued he was entitled to a greater share of the fee than the firm because he was responsible for the entire case, during his time with the firm and later as superseding attorney. Radomski said that prior to September 2019, CHS never offered to settle the matter for more than 15% of partial total disability. He therefore contended that the firm could not base its demand for fees based on the judge's recommendation.

Radomski also stated that after he left the firm, he had difficulties dealing with opposing counsel regarding the requests for additional discovery, the request for further testimony by the petitioner, and updated physical examinations. He asserted that he spent a significant amount of time rescheduling the medical exams.

Lockspeiser further argued that Radomski's claim that he worked on the file while he was at the firm was "completely irrelevant" to the allocation of the fee. He stated that any work Radomski performed on the case while at the firm was the firm's work product and must be allocated to the firm.

The judge placed her decision on the record. The judge stated that her decision must be based on an application of the doctrine of quantum meruit and

equitable principles. The judge stated that the fee should be apportioned based amount of work the firm and Radomski performed, rather than a calculation of the hours devoted to the case and application of an hourly rate.

The judge emphasized the amount of work required to bring the case "to fruition," and stated that Radomski deserved extra consideration for work he performed on the case after he left the firm. The judge awarded 60% of the fee ($11,640) to Radomski and 40% ($7,760) to the firm. The judge memorialized her decision in an order dated October 7, 2019.

The judge later filed a letter opinion amplifying her decision. The judge found the firm had handled the matter for a substantial period of time and had "rendered services" in an effort to bring the matter "to its conclusion." The judge also found that Radomski had performed a substantial portion of the work while he was at the firm, including trial preparation, direct and cross examination of petitioner, and responding in July 2017 to CHS's motions to compel discovery.

The judge stated that Radomski participated in negotiations and performed additional work on the case after he left the firm. The judge found that Radomski's efforts resulted in a settlement with a higher amount than CHS had initially offered. The judge stated that the amount petitioner ultimately

recovered was "substantially due" to Radomski's efforts and the contributions he made in advancing the case.

The judge added that Radomski's efforts resulted in a "better award" than CHS offered before Radomski's departure from the firm. The judge found that Radomski's efforts were "crucial" to the resolution of the case and he was "solely responsible" for the "higher" award obtained. The judge concluded that Radomski should be awarded 60% and the firm awarded 40% of the fee. This appeal followed.

On appeal, the firm argues that in applying the doctrine of quantum meruit, the court should base the fee allocation on the length of time each firm spent on the case relative to the total amount of time expended to conclude the case. The firm also argues that the award here represents a windfall to an attorney who left the firm and then continued as substitute counsel in the case.

In response, Radomski argues that we should affirm the judge's order. He asserts that the firm has failed to establish that the allocation of the fee represents a "manifest injustice." He contends the amount of time an attorney has control of "a file" is not equivalent to the amount of work the attorney actually performed on the case.

The Legislature has delegated "exclusive original jurisdiction of all claims for workers' compensation benefits" to the Division. N.J.S.A. 34:15-49. A judge of compensation may in his or her discretion award the prevailing party a reasonable attorney's fee not to exceed 20% of the judgment. N.J.S.A. 34:15-64(a). The reasonableness of an attorney's fee award is fact dependent and based on the circumstances of each case. Gromack v. Johns-Manville Prods. Corp., 147 N.J. Super. 131, 137 (App. Div. 1977).

When the petitioner's attorney requests a fee, not to exceed the statutory amount, the request "must be supported by an affidavit of services that demonstrates the extent of the attorney's efforts, including the time expended and 'the extent of his expertise and experience in the particular medical-legal field involved and any other factor which he deems relevant to the valuation of his services.'" Quereshi v. Cintas Corp., 413 N.J. Super. 492, 500 (App. Div. 2010) (quoting Gromack, 147 N.J. Super. at 136).

In this appeal, the firm does not challenge the amount of the fee awarded. Rather, the firm contends the judge erred by only awarding it 40% of the approved fee. The firm argues that the judge erred by making her decision without affidavits of service for the hours and work the firm and superseding counsel performed. The firm also contends the judge failed to consider the

A-0573-19T4

actual hours of work that it performed while it was counsel of record, and the actual hours of work that Radomski performed as superseding counsel.

Where, as here, an attorney is retained on a contingent fee basis and is discharged or replaced before the matter is resolved, the superseding attorney generally is "not entitled to recover fees on the basis of such contingent agreement; instead, [the attorney] may be entitled to recover on a [quantum meruit] basis for the reasonable value of the services rendered." Glick v. Barclays De Zoete Wedd, Inc., 300 N.J. Super. 299, 310 (App. Div. 1997). In La Mantia v. Durst, 234 N.J. Super. 534 (App. Div. 1989), we enunciated the principles the trial courts should apply when determining the amount of a fee the court should award in these circumstances.

In La Mantia, a law firm agreed to represent the plaintiff on a contingency fee basis and assigned the case to one of its partners. Id. at 536. The partner in the firm devoted a substantial amount of his billable hours developing the case over a period of nearly two years, during which time the firm also advanced monies for litigation expenses. Ibid. The partner then withdrew from the firm and the client retained him to continue with the case. Ibid.

The firm filed a substitution of attorney with the court and a motion to preserve its attorney's lien. Ibid. The matter was thereafter was tried before a

jury, which returned a verdict in favor of plaintiff in the amount of $2.1 million. Id. at 537. While the judgment was on appeal, the parties settled for a $1 million lump sum payment, and monthly annuity payments of $7,000. Ibid.

The successor firm then filed a motion for an increased fee, which the trial court granted. Ibid. Thereafter, "the respective law firms squared-off for judicial apportionment of that fee." Ibid. The trial court allocated a portion of the fee to the firm that first handled the matter, based solely on its billable time and its hourly rate. Ibid. The firm appealed. Id. at 535-36.

We stated that the proper measure of the former firm's compensation involved application of quantum meruit principles. Id. at 537. We noted that the phrase quantum meruit "simply means 'as much as he deserves,' therefore, any distribution of a contingency fee award between the two firms is by its very nature a fact sensitive decision." Ibid. We emphasized that when the court deals with equitable principles such as quantum meruit, "hard and fast rules are difficult to apply, let alone construct." Id. at 539-40.

We noted, however, that courts should consider several factors in allocating the fees between successive firms. Id. at 540-41. These factors include the length of time the firms devoted to the case, "relative to the total amount of time expended to conclude the client's case." Id. at 540 (footnote

omitted). The court should consider the "result[s] of each firm's efforts" and the reason the client changed attorneys. Ibid. In addition, the court should review the recovery realized and any relationship or agreement the departing attorney has with his former firm that might impact the division of the fee. Id. at 541.

We held that the trial court erred by basing the allocation solely on "the hours spent" by the first firm on the case "multiplied by the hourly rate." Ibid. We stated that the court failed to consider that while the departing attorney

> worked extensively on the case while he was with the [first] firm, he was being compensated by them through the efforts of all of the firm's attorneys. Therefore, even if his was the principal effort in developing plaintiff's claim, his ability to develop the case was generated while a partner compensated by the [first] [f]irm. Furthermore, the financial resources of the [first] [f]irm allowed [the departing attorney] to fully explore the viability of the claim by obtaining experts and spreading the costs among its partners, subject to RPC 1.8. These expenditures took place while the claim was still questionable. Background work often determines the ultimate success of the claim.

> [Id. at 542.]

We added that every firm "faces the possibility" that one of its members who has been assigned to a particular matter "could leave with a substantially prepared case." Ibid. Indeed, a client may elect to "follow" the attorney who

12

was "most heavily involved" in the litigation.  <u>Id.</u> at 542-43.  We emphasized,

however, that

> [t]his fact of professional life, however, should not deprive the firm whose services the client initially sought from equitably realizing fruits of its reasonable expectancy in the contingent fee.  These include, in addition to recognition of the factor of initial attraction of the client, the quality of the firm's initial investment of time, skill and funds in investigation, construction of pleadings, discovery, choice of experts, research and those other foundational services which shape the ultimate result, good or bad, of every lawsuit.  It is not just that a lawyer fortuitously assigned to the matter can leave with a substantially prepared case, which is subject only to a wholly contingent obligation for its preparation, limited to reimbursement on an hourly basis, with no recognition to the factors mentioned above.  There should, in any event, be a record developed together with findings of fact, so as to assure that there is both a fair accommodation of client interests and recognition of the true worth of the inception and preparation phase of a litigated matter.
>
> The courts should not foster such behavior in the bar by permitting the defecting attorney to obtain a windfall.  Such windfalls are created where, as here, the trial court fails to recognize the value of the initial firm's willingness to risk the time and money to develop the claim.  By compensating the original firm solely for time spent, the trial court does not permit that firm to benefit from the risk taken and thereby discourages firms from taking such cases.
>
> [<u>Id.</u> at 543.]

In this case, the judge properly recognized that the allocation of the fee should be based on the principles enunciated in <u>La Mantia</u>. However, the attorneys failed to provide the judge with a proper factual basis for application of those principles. While it was appropriate for the judge to refer to the court's records and her own personal involvement in the matter as support for her analysis, the attorneys failed to submit affidavits or certifications setting forth additional facts that were essential to the judge's decision.

As noted previously, on appeal, the firm argues that the judge erred by making her decision without any affidavits of service for the hours and work performed. However, the firm did not provide the judge with an affidavit or certification detailing the hours and work the firm performed on the case while it was counsel of record.

In its brief, the firm asserts that it does not keep track of every hour applied to a workers' compensation claim because fees in these cases are awarded according to statute. It is clear, however, that where, as here, a firm is seeking an allocation of fees, an affidavit or certification of services is required. An attorney must submit an affidavit of services when seeking the award of counsel fees. <u>Quereshi</u>, 413 N.J. Super. at 500 (App. Div. 2010) (citing <u>Gromack</u>, 147

14

A-0573-19T4

N.J. Super. at 136).  No less is required when a firm asks the court to apportion the fee based on equitable principles.

We note that, in its brief on appeal, the firm sets forth what it says is a "detailed description of some of the work" performed by the firm when it was attorney of record.  This discussion includes several pages of dates and a statement of the various tasks that the firm performed.  The firm also asserts that Radomski was terminated and left the firm with a case that had been "substantially prepared."

In addition, the firm argues that it compensated Radomski while he was working at the firm and he "did not participate in profit sharing."  The firm claims Radomski did not bring this case to the firm, and a senior partner assigned him to work on the file.  The firm also indicates that it paid for the expert reports and other expenses.  The firm did not file an affidavit or certification in the Division setting forth any of these facts.

Therefore, the judge of compensation could not properly assess the amount of time the firm worked on the case or make any specific findings as to the specific tasks the firm performed while it was counsel of record.  The judge could not determine the extent to which the firm assumed financial risk in handling the matter or make any finding as to whether the case was

"substantially prepared" before Radomski left the firm and took on the case as superseding counsel.

In responding to the firm's arguments on appeal, Radomski argues that the judge did not err by awarding him 60% of the fee. We note, however, that Radomski also failed to provide the judge with an affidavit or certification setting forth sufficient facts to support the judge's decision.

Radomski claims the amount of time the firm devoted to the case was minimal and he estimates that he only spent about thirty to forty billable hours on the case while at the firm. He states that at his hourly rate of pay, this would have cost the firm no more than $2,120. He also states that CHS made an offer to settle the matter in September 2019, for 15% partial total permanent disability. None of these facts were presented to the judge in an affidavit or certification.

In addition, Radomski asserts he performed various tasks as superseding attorney, but he does not indicate the amount of time he devoted to these tasks. He insists that the time he worked on the file while at the firm is relevant to the allocation of the fee, but fails to recognize that under La Mantia, his work was the firm's work product. Radomski also does not recognize that the resulting

settlement may have been due, in part, to the development of the case while he was at the firm.

We are therefore convinced the judge's decision to allocate 60% of the fee to Radomski and 40% to the firm is not supported by sufficient credible evidence in the record. As noted, in her decision, the judge found that Radomski's efforts as superseding counsel were "crucial to the resolution of the claim" and "solely responsible for the higher award that was obtained" by the client. The record lacks sufficient credible to support that finding.

The judge also found that the firm had the case for a substantial period of time "and rendered services consistent with the desire to bring the case to its conclusion." This finding also is not supported by sufficient credible evidence in the record. Furthermore, the attorneys did not provide the judge with sufficient facts so that she could consider the "firm's initial investment of time, skill and funds in investigation, construction of pleadings, discovery, choice of experts, research and those other foundational services which shape the ultimate result, good or bad, of every lawsuit." La Mantia, 234 N.J. Super. at 543.

The judge also stated that Radomski engaged in additional negotiations after he left the firm and those negotiations resulted in the offer by CHS of a "higher award." As noted, the case ultimately settled at 37.5% partial total

disability, and Radomski asserts that before the final settlement was reached, CHS never offered more than 15%.

The record shows that in June 2018, after petitioner testified, the judge recommended a settlement of 37.5% of partial total permanent disability. The firm claims its efforts were responsible for 37.5% of the settlement award, whereas Radomski contends his efforts resulted in the increase of the offer from 15% to 37.5%. The attorneys failed to provide the judge with sufficient credible evidence to resolve this issue.

Accordingly, we reverse the judge's order of October 2, 2019, and remand the matter for reconsideration of the allocation of the fee. The firm and Radomski should each provide the judge with affidavits or certifications with all facts and documents relevant to the allocation of the fee. The judge shall reconsider her decision, apply the principles enunciated in La Mantia, and make appropriate findings of fact and conclusions of law. We express no view as to the amount of the fee that should be awarded to the firm and to Radomski.

Reversed and remanded to the Division for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION