**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5537-18T2

MICHELLE HAMOR as
executor of the ESTATE OF
SADIE METZIGIAN, deceased,
and MICHELLE HAMOR,
individually,

     Plaintiff-Appellant,

v.

SPRINGPOINT AT
MONTGOMERY, d/b/a
STONEBRIDGE AT
MONTGOMERY, INC.,

     Defendants-Respondents.

_____

Submitted November 30, 2020 – Decided December 15, 2020

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0162-15.

Michelle Hamor, appellant pro se.

Burns White, LLC, attorneys for respondents (Frantz J. Duncan and Ahsan A. Jafry, on the brief).

PER CURIAM

In this medical-malpractice case, plaintiffs appeal from two orders dated June 7, 2019 and June 21, 2019: the former granted Stark & Stark's motion to be relieved as plaintiffs' counsel, and the latter granted summary judgment to Springpoint at Montgomery Inc., d/b/a Stonebridge at Montgomery, Inc. (defendants). We conclude the judge did not abuse his discretion by allowing counsel to withdraw, and that he correctly entered summary judgment because plaintiffs' expert gave a net opinion. We therefore affirm.

On January 21, 2015, Sherri L. Warfel of Pellettieri Rabstein & Altman filed a complaint alleging defendants were negligent in rendering medical care to Sadie Metzigian in defendants' nursing home.[1] Specifically, plaintiffs allege that defendants provided substandard care, causing Metzigian to injure her back due to a fall. Defendants filed their answer on March 26, 2015. On September 15, 2017, Warfel filed a substitution of attorney reflecting her new affiliation with the law firm Stark & Stark.

On July 18, 2018, defendants filed a motion to strike plaintiffs' expert report, authored by Dr. Adam H. Karp, M.D., arguing that the opinion amounted

---

[1] After Metzigian's passing, the judge entered a consent order allowing plaintiff Hamor to prosecute the case on behalf of Metzigian's estate.

to a net opinion. Plaintiffs filed opposition, and due to settlement negotiations, defendants withdrew the motion. The parties were unable to reach a settlement.

On April 18, 2019, defendants filed a motion for summary judgment, repeating their contention that plaintiffs' expert opinion constituted a net opinion. The return date for this motion was May 24, 2019. Discovery closed on April 29, 2019, and on April 30, 2019, the judge set a trial date for July 22, 2019.

About two weeks later, on May 16, 2019, plaintiffs' counsel filed a motion to be relieved as counsel, which had a return date of June 7, 2019. Plaintiffs opposed the motion to withdraw as counsel. Plaintiffs' counsel and defendants' counsel agreed to adjourn the return date of defendants' motion for summary judgment to June 21, 2019, thus allowing plaintiffs counsel's motion to be heard first.

On June 7, 2019, the judge granted plaintiffs' counsel's motion. That same day, the judge scheduled a case management conference for July 10, 2019. However, the judge sent this notice to plaintiffs' now-relieved counsel and defendants' counsel, rather than the pro se plaintiffs. There was no mention of the status of the pending unopposed motion for summary judgment or the upcoming trial date.

The judge attempted unsuccessfully to contact plaintiffs before adjudicating defendants' summary judgment motion. On June 21, 2019, the judge granted defendants' motion for summary judgment, concluding that plaintiffs' expert rendered a net opinion. Four days later, the judge placed his oral decision on the record, stating he likely would have adjourned defendants' motion if plaintiffs had answered his chamber's attempts to contact them. Since there was no response, however, he moved forward. The judge amplified his opinion on August 13, 2019, which reiterated that plaintiffs failed to respond to his chamber's attempts at contacting them prior to his decision on defendants' motion.

On appeal, plaintiffs raise the following points for this court's consideration:

> POINT I
>
> THE [JUDGE] ERRED WHEN [HE] PERMITTED PLAINTIFFS' COUNSEL TO WITHDRAW AS COUNSEL.
>
> A. The [Judge] Should Not Have Permitted [Plaintiffs' Counsel] To Withdraw Under The Circumstances At Issue And With Grave Detriment To Plaintiffs Being Highly Probable, If Not Nearly Certain[.]
>
> B. A Dispute Over Settlement Is Not A Proper Basis For An Attorney To Withdraw Representation From A Client In Any Event[.]

C. Once Discovery Is Closed And A Trial Date Has Been Set, If The Client Does Not Consent An Attorney Should Only Be Permitted To Withdraw Where The Client's Actions Render The Attorney's Ability To Try The Case Unreasonably Difficult As Shown By Clear And Convincing Evidence, So The Client Is Not Left In The Lurch.

D. The [Judge] Erred In Resolving The Situation Between Plaintiffs And [Plaintiffs' Counsel] On The Basis Of Conflicting Certifications Without Holding A Plenary Hearing[.]

E. The [Judge] Failed To Provide Any Reasons To Justify [His] Ruling[.]

POINT II

PROCEDURALLY, THE [JUDGE] ERRED IN GRANTING DEFENDANTS['] MOTION FOR SUMMARY JUDGMENT TWO WEEKS AFTER [HE] HAD RENDERED PLAINTIFFS PRO SE[.]

POINT III

SUBSTANTIVELY, THE [JUDGE] ERRED IN GRANTING DEFENDANTS['] MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFFS' EXPERT WAS HIGHLY QUALIFIED TO GIVE THE OPINIONS AT ISSUE AND BECAUSE THOSE OPINIONS WERE NOT NET OPINIONS[.]

A. A Motion Judge Is Still Required To Carefully Review A Motion For Summary Judgment Even If It Is Unopposed.

5

B. The Arguments That Plaintiffs' Expert's Opinion Was A Net Opinion Are Utterly Specious And Devoid of Real Merit.

   1.  Plaintiffs' Expert Is Qualified To Be An Expert In A Geriatric Fall Occurring In A Health-Care Facility.

   2.  Plaintiffs' Expert Reviewed All Of The Relevant Medical Records And Was Therefore Able To Render A Reasonably Reliable Opinion About . . . Metzigian Without Examining Her.

   3.  Plaintiffs' Expert Did Not Render A Net Opinion And Gave The Whys And Wherefores For His Position In Detail[.]

   4.  Plaintiffs' Expert Witness Was Not Required To Cite To Authoritative Materials In Support Of His Expert Position.

   5.  Plaintiffs' Expert Witness Is Entitled To Opine About The Cause Of . . . Metzigian's Fracture Even If He Is Not A Radiologist Or Orthopedist.

   6.  Plaintiffs' Expert Witness Did Not Provide A Net Opinion On . . . Metzigian's Need To Be In A Higher-Level Care Facility Due To Her Fall And Back Fracture.

POINT IV

IF THE APPELLATE DIVISION REVERSES AND REINSTATES, A NEW JUDGE SHOULD BE ASSIGNED[.]

I.

We begin by addressing plaintiffs' argument that the judge erred by granting plaintiffs' counsel's motion to withdraw. They contend that the judge failed to hold a plenary hearing, that their counsel did not sufficiently explain the reason for withdrawal, and that the judge did not provide reasons for granting the motion.

We review a trial judge's determination on whether to allow the withdrawal of counsel for an abuse of discretion. See Jacobs v. Pendel, 98 N.J. Super. 252, 255 (App. Div. 1967). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Castello v. Wohler, 446 N.J. Super. 1, 24 (App. Div. 2016) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). A trial judge has the discretion to grant a motion to be relieved as counsel, and he or she should consider the "proximity of the trial date and possibility for the client to obtain other representation." In re Simon, 206 N.J. 306, 320 n.8 (2011) (quoting Pendel, 98 N.J. Super. at 255).

Unless the client consents, counsel must give notice to the client and obtain leave of court to withdraw from a representation. R. 1:11-2(a)(2); see also RPC 1.16(c). That is the situation here. RPC 1.16(b) allows counsel to

7

withdraw when "the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement" or "other good cause for withdrawal exists." Where the relationship between counsel and client has deteriorated to the point where the lawyer and client are at total odds, withdrawal is often in the client's best interest. See Tax Auth., Inc. v. Jackson Hewitt, Inc., 377 N.J. Super. 493, 501 n.4 (App. Div. 2005), rev'd on other grounds, 187 N.J. 4 (2006).

Here, plaintiffs argue "a dispute over settlement is not a proper basis for an attorney to withdraw." But plaintiffs' counsel filed the motion because the attorney-client relationship deteriorated. In support of the motion to withdraw, plaintiffs' counsel provided two certifications. The first, authored by Warfel, described the deteriorated attorney-client relationship. For example, after the settlement conference in March 2018, Hamor and her husband

> would address the same questions to me and would inevitably receive the same answers which seemed to irritate [Hamor] . . . . [T]he extent to which the inquiries were repeated and had to be repeatedly answered became unusual and nearly obsessive in nature . . . .
>
> Emails, phone calls, requests, and inquiries increased. Those emails became acrimonious, taunting, and derogatory.

Warfel certified that she told plaintiffs it would be best if they find another attorney. Inevitably, because plaintiffs did not want to do so, Warfel's colleague in the firm, Denise Mariani, took over plaintiffs' case. Warfel also certified that plaintiffs continued this same behavior with Mariani. The second certification, authored by Mariani, also described the attorney-client relationship and emphasized that plaintiffs sent numerous emails which were "argumentative and some [were] personally insulting."

Hamor provided a certification in opposition to the motion to withdraw. She certified she was a diligent client and admitted that there were several issues between her and counsel over the years—mostly communication and strategy issues. Hamor did not suggest she had a positive relationship with counsel, and importantly, she did not mention or dispute that she and her husband had sent "taunting" and "insulting" emails to plaintiffs' counsel. Contrary to plaintiffs' assertion, Hamor's certification does not "conflict" with plaintiffs' counsel's certifications.

The judge did not initially provide his reasons for granting the motion. However, in his amplification, the judge reiterated that he reviewed all moving papers on the motion, which were filed under seal, before entering the order. On this record, it is clear to us that the relationship had deteriorated and there was

an ample basis to grant the motion.  After reviewing the certifications and the record, we conclude the judge did not abuse his discretion.

## II.

We now turn to whether the judge gave plaintiffs an opportunity to respond to defendants' motion for summary judgment.  They argue that the judge failed to communicate with them, and that they were under the impression that defendants' motion would be dealt with at the case management conference scheduled for July 10, 2019.

"The United States Supreme Court has recognized the due process guarantee expressed in the Fourteenth Amendment to the United States Constitution includes 'the requirement of "fundamental fairness"' in a legal proceeding."  In re Adoption of Child ex rel. M.E.B., 444 N.J. Super. 83, 88 (App. Div. 2016) (quoting Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 24 (1981)); see also Doe v. Poritz, 142 N.J. 1, 99 (1995).  The New Jersey Supreme Court has adopted these protections through Article I, Paragraph 1 of the State Constitution, "concluding it also '"protect[s] against injustice and, to that extent, protect[s] values like those encompassed by the principle[s] of due process[,]"' even though the provision 'does not expressly refer to the right to due process of law[.]'"  M.E.B., 444 N.J. Super. at 88 (alterations in original) (quoting Crespo

v. Crespo, 408 N.J. Super. 25, 34 (App. Div. 2009), aff'd o.b., 201 N.J. 207 (2010)).

"A litigant in civil proceedings is entitled to a fair hearing, imbued with the protections of due process." Ibid. "In the context of litigation, fundamental due process demands a party be given adequate notice and a reasonable opportunity to be heard." Ibid.; see also Div. of Youth and Family Servs. v. M.Y.J.P., 360 N.J. Super. 426, 464 (App. Div. 2003). "Due process is not a fixed concept, however, but a flexible one that depends on the particular circumstances." Poritz, 142 N.J. at 106. Our Supreme Court has observed that "[f]undamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Ibid.

Plaintiffs were given an opportunity to be heard. Here, counsel agreed to adjourn the return date of the summary judgment motion until the judge adjudicated plaintiffs' counsel's motion to withdraw. After the judge allowed counsel to withdraw, he notified pro se plaintiffs about the pending summary judgment motion. In his statement of reasons granting summary judgment, the judge said his chambers "reached out to . . . . plaintiff[s] on multiple occasions to see if they were going to oppose the motion or if they wanted an adjournment or wanted to come in for case management but [this court] has not heard any

response."  Further, in his amplification of his decision, the judge repeated that "chambers reached out to plaintiff[s] on multiple occasions to see if plaintiff[s] wanted to file opposition [to the motion for summary judgment], wanted an adjournment or a case management conference.  Since [this court] did not hear back from plaintiff[s], the unopposed motion was decided on June 21, 2019."  The judge also stated "the record reflects that chambers reached out to plaintiff[s] on multiple occasions."  On this record, we see no error.

III.

Plaintiffs argue for the first time that defendants were not entitled to summary judgment because their expert did not render a net opinion.  Thus, they now make the contention that they would have otherwise made had they opposed defendants' motion.  Although plaintiffs did not oppose the motion, we consider their substantive assertions.  Critical to such a consideration is whether the expert gave a net opinion.

We review a ruling on a summary judgment motion under the same standard that governed the trial judge.  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

12

genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995).  We "must accept as true all the evidence which supports the position of the party defending against the motion and must accord him [or her] the benefit of all legitimate inferences which can be deduced therefrom[.]"  Brill, 142 N.J. at 535 (first alteration in original) (quoting Lanzet v. Greenberg, 126 N.J. 168, 174 (1991)).  "When . . . a trial [judge] is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'"  Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010)).  "[Our] review of the trial [judge]'s decisions proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial [judge]."  Ibid.

Generally, traditional negligence principles apply to a medical-malpractice case.  Verdicchio v. Ricca, 179 N.J. 1, 23 (2004).  "In a medical-malpractice action, the plaintiff has the burden of proving the relevant standard of care governing the defendant[], a deviation from that standard, an injury proximately caused by the deviation, and damages suffered from the

defendant['s] negligence." Smith v. Datla, 451 N.J. Super. 82, 102 (2017) (quoting Komlodi v. Picciano, 217 N.J. 387, 409 (2014)).

The admission or exclusion of expert testimony is within the trial judge's sound discretion. Pierre, 221 N.J. at 52 (citing State v. Berry, 140 N.J. 280, 293 (1995)). "Absent a clear abuse of discretion, [we] will not interfere with the exercise of that discretion." Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 247 (App. Div. 2014) (quoting Carey v. Lovett, 132 N.J. 44, 64 (1993)), aff'd as modified, 224 N.J. 584 (2016). Again, an abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg, 171 N.J. at 571 (citation omitted).

N.J.R.E. 702 governs the admissibility of expert testimony and states that: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." The rule imposes three requirements:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable;

and (3) the witness must have sufficient expertise to offer the intended testimony.

[Creanga v. Jardal, 185 N.J. 345, 355 (2005) (quoting Kemp ex rel. Wright v. State, 174 N.J. 412, 424 (2002)).]

Additionally, N.J.R.E. 703 mandates that expert opinions be grounded in "facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts." Pierre, 221 N.J. at 53 (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)).

"It is well-established that the trial [judge] 'must ensure that [a] proffered expert does not offer a mere net opinion.'" Satec, Inc. v. Hanover Ins. Grp., Inc., 450 N.J. Super. 319, 330 (App. Div. 2017) (second alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011)). "Such an opinion is inadmissible and 'insufficient to satisfy a plaintiff's burden on a motion for summary judgment.'" Ibid. (quoting Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 244 (App. Div. 2013)). The net opinion rule "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." State v. Townsend, 186 N.J. 473, 494 (2006). A conclusion "based merely on unfounded speculation and unquantified

15

possibilities" is inadmissible. Pierre, 221 N.J. at 55 (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). The rule requires that an expert provide "'the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013) (quoting Pomerantz Paper, 207 N.J. at 372). Moreover, the expert may not base his or her opinion solely on his or her own subjective standard. Pomerantz Paper, 207 N.J. at 373 (stating "if an expert cannot offer objective support for his . . . opinions, but testifies only to a view about a standard that is 'personal,' it fails because it is a mere net opinion"). In other words, experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Pierre, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). However, experts may base their opinions on their personal experience and training. See Townsend, 186 N.J. at 493; see also Rosenberg v. Tavorath, 352 N.J. Super. 385, 403 (App. Div. 2002) (emphasizing that "[e]vidential support for an expert opinion is not limited to treatises or any type of documentary support, but may include what the witness has learned from personal experience").

First, we conclude the judge did not abuse his discretion in ruling that plaintiffs' expert, Dr. Karp, offered a net opinion as to the standard of care and causation. The judge held that "Dr. Karp is not qualified to render an opinion pertaining to a violation of the nursing standard of care or to the cause of the fracture." He based his decision on the fact that

> Dr. Karp is an internal medicine and geriatric physician offering a causation opinion regarding the genesis of fractures which is distinct from his area of expertise. Dr. Karp has admitted at his deposition that the diagnosis of fractures are typically done by either a radiologist or an orthopedic physician and that he would generally not diagnose or treat fractures in his practice. He also testified that he did not review any of the radiology films.

The record supports the judge's conclusions.

For instance, in Dr. Karp's reports,[2] he stated defendants breached their standard of care towards Metzigian, and this breach caused Metzigian's injury. However, as to both elements, Dr. Karp did not give the "why and wherefores" of his opinion; he simply provided a conclusory statement. Dr. Karp stated he based his conclusions

---

[2] Dr. Karp's initial report is dated January 12, 2017. He then issued four supplemental reports dated February 13, 2018; March 29, 2018; September 9, 2018; and September 12, 2018. Rather then add anything substantive, these supplemental reports continue to add to the list of documents he reviewed to render his report. He did not change his opinions or conclusions.

A-5537-18T2

in part from [his] experience as a Board Certified Internist and Geriatrician with more than [twenty] years experience. Additionally, as part of [his] position as the Medical Director of the Geriatric Fall Evaluation Unit for the Hospital for Joint Diseases in [New York], [he] often determine[s] what level of care is needed for patients at risk for falling.

Dr. Karp admitted during his deposition that he is not an expert in nursing care, does not treat patients living in nursing homes or assisted living facilities, and does not supervise nurses in nursing homes or assisted living facilities.

As to causation, the record also shows Dr. Karp did not provide the whys and wherefores, nor did he have the experience or expertise to offer an opinion. At his deposition, Dr. Karp admitted he based his causation opinion on subjective evidence, specifically "the clinical aspects of the fracture, which means that [Metzigian] had no pain prior to the . . . fall. Then, after the fall, she had pain." He never physically examined Metzigian. Additionally, he admitted that a causation diagnosis is normally performed by an orthopedist or a radiologist, and that he did not actually look at Metzigian's films because he is not experienced in reading such. Therefore, the judge did not abuse his discretion in deeming Dr. Karp's causation opinion as a net opinion. Because plaintiffs provided no other expert reports, summary judgment was appropriate.

A-5537-18T2

To the extent we have not addressed plaintiffs' remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5537-18T2